UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| BENJAMIN RAGOS | CASE NO 11-10522 |
| STELLA CANNON RAGOS | SECTION A |
| DEBTORS | CHAPTER 13 |

### REASONS FOR ORDER DENYING
### TRUSTEE'S OBJECTIONS TO PLAN CONFIRMATION

This matter came before the Court on an Objection to Confirmation (P-37) filed by S.J. Beaulieu, the standing Chapter 13 Trustee ("Trustee"). Trustee objected to confirmation of the Chapter 13 plan filed by Benjamin Ragos ("Mr. Ragos") and Stella Ragos ("Mrs. Ragos") (collectively "Debtors") on the following grounds:

> 1) not all disposable income and not all social security income provided to plan. 2) Debtors have not committed all disposable and social security income to the repayment of creditors and that the plan was not proposed in good faith. 3) Does not pay Debtor's liquidation analysis. 4) Louisiana has opted out of federal exemptions. Social Security not exempt under Louisiana law.

A hearing on the Amended Objection took place on June 7, 2011. Andrew Wiebelt, counsel for Trustee, and Mark Needham, counsel for Debtors, were present. At the hearing, Trustee withdrew his third and fourth objections.

11 U.S.C. §§ 1325 (a)(3) and (a)(7) mandate that a Chapter 13 plan be proposed in good faith and not by any means forbidden by law and that the action of the debtor in filing the petition be in good faith. If a party in interest objects to a debtor's good faith, the court must take evidence and make a factual determination on the issue based on the totality of the circumstances. *Goeb v. Heid*, 675 F.2d 1386, 1391 (9th Cir. 1982); *Smyrnos v. Padilla*, 213 B.R. 349, 352 (9th Cir. BAP 1997).

Once a party raises an objection to a debtor's good faith, the debtor bears the burden of

1

proving good faith by a preponderance of the evidence. *Padill*a, 213 B.R. at 352; *In re Lavilla*, 425 B.R. 572, 576, 580-81 (E.D. Cal. 2010). The parties stipulated Debtors have met their burden of establishing good faith and that Trustee now bears the burden of refuting same.

After hearing arguments and taking judicial notice of all pleadings filed in the record, including the proofs of claim and schedules, this Court took the matter under advisement on June 7, 2011.

After considering the briefs, evidence submitted, arguments of counsel, and the relevant law, the Court makes the following findings of fact and conclusions of law.

**I.     JURISDICTION**

This Court has jurisdiction pursuant to 28 U.S.C. §§ 157(b)(2)(L) and 1334. Venue is appropriate under 28 U.S.C. § 1408(l).

**II.    FACTS**

Mr. Ragos receives $1,300.00 per month and Mrs. Ragos receives $554.00 per month in social security benefits. There have been no changes in the amount of social security benefits received prior to and after the filing of the bankruptcy petition. In addition, Debtors have income of $2,859.00 from retirement benefits and a VA disability. Schedule I also lists Mr. Ragos' monthly take home pay at $2,599.65.

Debtors filed their proposed plan on February 22, 2011, and amended it on May 21, 2011. Debtors' amended plan provides for payments of $526.00 for the first month and $576.00 for the following fifty-nine (59) months of the plan. The liquidation value of Debtors' estate over and above payments to secured, administrative and priority claimants is $8,990.00. Debtors propose to pay $9,002.38 to unsecured creditors over the life of the plan.

Monthly expenses, as reflected on Debtors' amended Schedule J, total $4,106.00. Trustee deemed the expenses reasonable and within federal guidelines. Debtors' amended Schedule I provides a voluntary contribution of $200.00 in social security benefits toward their required plan contribution. The remaining social security benefits received by Debtors are retained.

Debtors scheduled unsecured debts of $51,153.68. The last day to file proofs of claim was July 5, 2011, and as of July 6, 2011, $23,389.87 in unsecured proofs of claim were on file.[1]

### III. FINDINGS

    A.    Exempt Nature of Social Security Benefits Under The Social Security Act and the Bankruptcy Code In the Calculation of Plan Payments

Since April 20, 1983, Congress specifically exempted social security benefits from "the operation of any bankruptcy or insolvency law." Specifically, Section 407 of the Social Security Act provides:

> The right of any person to any future payment under this title shall not be transferable or assignable, at law or in equity, and **none of the moneys paid or payable or rights existing under this title shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law.**
>
> No other provision of law, enacted before, on, or after the date of the enactment of this section may be construed to limit, supersede, or otherwise modify the provisions of this section **except to the extent that it does so by express reference to this section**.
>
> Nothing in this section shall be construed to prohibit withholding taxes from any benefit under this title, if such withholding is done pursuant to a request made in accordance with section 3402(p)(1) of the Internal Revenue Code of 1986 by the person entitled to such

---

[1] Claim number 3 for $3,957.00 was filed as unknown as to priority or security. This claim has been included in the calculation of unsecured claims.

benefit or such person's representative payee.  (emphasis added)[2]

While the language of 42 U.S.C.A. § 407(a) is broad, it does have two (2) important exceptions.  28 U.S.C.A. § 3402(p)(1) provides that federal payroll taxes incurred as a result of social security benefits may be paid from those benefits.  Additionally, 42 U.S.C.A. § 405(j) allows the Social Security Administration to pay benefits directly to a representative payee if provided for the benefit of the individual recipient.  Typical examples of this exception allow the payment of benefits to a hospital caring for the individual.  As a result, while the benefits attributable to social security may be excluded from the calculation of disposable income, both payroll taxes incurred as a result of their receipt, as well as debtor's actual medical expenses are susceptible to objection by Trustee as an unnecessary or unreasonable deduction from current

---

[2]The bankruptcy court for the Northern District of New York set out the history of Section 407 as follows:

"Prior to the passage of the Bankruptcy Reform Act of 1978, which introduced the current chapter 13 of the Code, the former Bankruptcy Act of 1898, as amended, allowed for a 'wage earner' plan under then chapter XIII. The Code expanded the class of individuals eligible to seek chapter 13 protection to include individuals whose only source of income was from social security benefits. See 11 U.S.C. sect. 109(e) (allowing 'individuals with regular income' to file for relief under chapter 13.)  As a result of this change, some early cases held that social security benefits were included as property of the estate under Code Sect. 541 and that the anti-assignment provision of the Social Security Act had been impliedly modified by the code.  In swift reaction to those cases, Congress amended the anti-assignment provision in 1983 to provide as follows:

No other provision of law, enacted before, on, or about April 20, 1983, may be construed to limit, supersede, or otherwise modify the provisions of this section except to the extent that it does so by express reference to this section.  42 U.S.C. Sect. 407(b).

The explicit language of the above amendment evinces Congress' clear intent that the anti-assignment provision is not to be deemed amended unless Congress specifically references the statute in the previous or subsequent legislation, absent which, social security income remains outside 'the operation of any bankruptcy ... law.'"

*In re Burnett*, 2011 WL 204907 (Bkrtcy, N.D.N.Y. 2011, Jan. 21, 2011).

monthly income.[3]

Although social security benefits were generally exempt from "operation of any bankruptcy law," prior to the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA"), some courts included social security income as part of the estate available to pay creditors. See *In re Hagel*, 184 B.R. 793 (9th Cir. BAP 1995). Perhaps in response to these cases, in 2005, Congress revised the Bankruptcy Code to specifically and unambiguously exclude amounts received as social security benefits from the definition of the income subject to claims of creditors ("current monthly income" or "CMI").[4] Section 101(10A) under BAPCPA. Under BAPCPA, CMI is utilized to calculate disposable income ("DI"), which is the starting point for determining a debtor's required plan payment.

In *Devilliers*, this Court held that social security benefits are excluded from calculations of CMI and DI for purposes of funding a Chapter 13 plan. *Devilliers*, *supra*. *Devilliers* found that it was reasonable to assume that Congress placed a high priority on allowing seniors to retain social security benefits, even if it resulted in lower distribution to creditors. As a result, the decision to exempt social security benefits from seizure by creditors and from inclusion in the definition of CMI and DI was a policy decision by Congress.

In *Devilliers*, Trustee argued, as he does here, that Congress' chosen definition of CMI

---

[3] "Because social security income is both available and answerable to pay these expenses, debtor will bear the burden of establishing the reasonableness of any requested deduction from current monthly income for this purpose." *In re Devilliers*, 358 B.R. 849, 865 (Bankr., E.D. La. 2007). In this case, the Debtors purposefully excluded deductions for medical expenses and for taxes incurred as a result of social security payments.

[4] As concluded in the *Burnett* decision, "contrary to any reference to the provision of section 407(a) of Title 42 to indicate an intent to modify the anti-assignment provision, Congress made clear in the BAPCPA amendments to the Code that social security benefits were not part of a debtor's disposable income." *In re Burnett*, 2011 WL 204907 (Bankr. N.D. N.Y. 2011, Jan. 21, 2011).

5

places a significant stream of income beyond the reach of creditors in Chapter 13 cases. The Court continues to acknowledge this as true. But the Court also finds that Congress, in plain and unambiguous language, specifically excluded social security benefits from CMI.

As noted in *Devilliers*, Congress is presumed to know the effect of its acts. *Cannon v. University of Chicago*, 441 U.S. 677, 99 S. Ct. 1946, 60 L.Ed.2d 560 (1979). For above the means test debtors, social security income may reach $24,636.00 for individuals and $49,272.00 for married couples. Unlike an unknown or unanticipated post-petition change in income, social security benefits are both predictable and certain.

The exclusion of social security benefits from DI might appear counter intuitive at first. However, because creditors had no right to seize these benefits pre-petition, their exclusion from DI post-petition is not a drastic change in a creditor's position. Decisions regarding credit advances could not, or perhaps should not, have been based on the existence of social security income. As a result, their exclusion leaves creditors in no worse a position than existed pre-petition. It appears that Congress, through BAPCPA and the Social Security Act, effected a policy decision that regardless of income level, a debtor's social security benefits would be protected from creditor interests. The rationale for this treatment lies in the exempt nature of the benefits themselves.

  B. Are Social Security Benefits Included in the Calculations of Projected Disposable Income?

Trustee argues that even if social security income is statutorily excluded from both the calculation of CMI and DI, the United States Supreme Court's recent decision in *Hamilton v. Lanning*, 130 S.Ct. 2464, 177 L.Ed.2d 23 (2010), supports including social security benefits in calculating Debtors' "projected disposable income" ("PDI").

6

In *Lanning,* the Supreme Court concluded that CMI and DI calculations are different from the calculation of PDI. Section 1325(b)(1)(B). DI is calculated by mechanically plugging into a formula the debtor's income from the six-month period prior to a bankruptcy filing. PDI, however, is a forward-looking analysis that takes into consideration a debtor's actual post-petition financial situation. *Lanning*, 130 S.Ct. 2464 (2010).

In the great majority of cases, the forward-looking analysis begins and ends with the calculation of DI. However, courts may go "further" and take into account other known or virtually certain changes in a debtor's future income. The Supreme Court stated, "[i]n cases in which a debtor's disposable income during the 6-month look-back period is either substantially lower or higher than the debtor's disposable income during the plan period, the mechanical approach would produce senseless results that we do not think Congress intended." *Lanning*, 130 S.Ct. at 2476.

Trustee argues that excluding Debtors' post-petition social security benefits from the calculation of Debtors' PDI leads to a "senseless result." He argues that Debtors' CMI from the six-month look back period is significantly lower than their PDI because the Debtors' pre-petition social security benefits are not included in the CMI. Trustee argues it would be a "senseless result" if the social security benefits are not included in PDI because by doing so, Debtors may retain excess PDI *(i.e.* the social security benefits) that should be committed to plan payments. Trustee avers that this is the unusual case the Supreme Court contemplated in *Lanning*. The Court disagrees and finds *Lanning* distinguishable.

The question presented in *Lanning* was "whether in calculating the debtor's 'projected disposable income' during the plan period, the bankruptcy court may consider evidence

suggesting that the debtor's income or expenses during that period are likely to be **different** from her income or expenses during the pre-filing period." *Id*., (emphasis added). In responding in the affirmative, the Supreme Court held that courts are allowed to take into consideration known or virtually certain changes in the debtor's disposable income at the time of confirmation.

In *Lanning*, the debtor received a one-time buy-out from her former employer within the six-month look back period. While this raised Lanning's income during the six months preceding bankruptcy, it was evident at confirmation that the increase was due to a single non-repeating event. According to *Lanning*, the calculation of PDI allowed the court to adjust debtor's required plan payment downward because it was both certain and predictable that the debtor's PDI post filing would be less.

The facts of this case are not analogous. There is no difference between Debtors' income in the six months preceding bankruptcy and today. There has been no allegation that Debtors received a one-time payment prior to filing bankruptcy, or that they will receive any new, additional income during the plan period. Furthermore, there is no allegation that the social security benefits will be any different post-petition than they were pre-petition.

Social security benefits are specifically excluded from the calculation CMI and DI by virtue of 11 U.S.C. §§ 101(10A) and § 1325(b). A "senseless result" will not flow from the exclusion of Debtors' exempt social security benefits when determining the appropriate and mandatory plan payments. The "senseless result" referred to by Trustee is simply one created by the intended application of the governing statutes, excluding social security benefits from a creditor's reach.

Trustee cites other courts holding that social security income should be included in PDI. *See In re Schnabel*, 153 B.R. 809 (Bankr. N.D. Ill. 1993), and *In re Timothy*, 2009 WL 1349741 (Bankr. D. Utah, May 12, 2009).[5] With respect to my brethren, the rationale used is these cases is simply unsustainable in light of BAPCPA's clear directive.

The recent case of *Baud v. Carroll*, 634 F.2d 327 (6th Cir. 2011), is true to the plain language of the governing statutes. In *Baud,* the United States Court of Appeals for the Sixth Circuit concluded that benefits received under the Social Security Act are not to be included in the calculation of PDI. The *Baud* Court found no support for the view:

> [T]hat a court may disregard the Code's definition of disposable income (which incorporates the income exclusions of Sect. 101(10A)) simply because there is a disparity between the amount calculated using that definition and the debtor's actual available income as set forth on Schedule I. In other words, the discretion *Lanning* affords does not permit bankruptcy courts to alter BAPCPA's formula for calculating disposable income (*i.e.,* does not permit the court to alter the items to be included in and excluded from income). Permitting the bankruptcy court ...to include Social Security benefits in the calculation of the Appellee's [debtor's] projected disposable income essentially would read out of the Code BAPCPA's revisions to the definition of disposable income." *Baud* at 345.

This Court also agrees with a similar ruling in *In re Barfknecht*, 378 B.R. 154 (Bankr. W.D. Tex. 2007). "The sounder conclusion is that, in calculating *projected* disposable income, we are constrained to begin with the debtor's disposable income as that term is defined for us by Congress in the statute. Thus, we conclude that benefits received under the Social Security Act are not income for the purposes of calculating projected disposable income and cannot be considered as part of the 'ability to pay test' of section 1325(b)(1)(B).") *Barfknecht*, 378 B.R. at 62.

---

[5]This Court finds that all cases decided under the pre-BAPCPA revisions are distinguishable from all post-BAPCPA cases on the topic of PDI. Quite simply, the law was arguably different pre-BAPCPA. The Court must look to the plain language of the applicable statutes as enacted in 2005, and the cases interpreting them.

This Court finds that the "clear indication by Congress that social security benefits are to be treated differently post-BAPCPA must override BAPCPA's purpose of ensuring that debtors 'repay creditors the maximum they can afford' ... because any application of that purpose must be 'consistent with the statutory text.'" *Baud* at 347.  As pointed out in *Barfknecht*, "an exclusion is an exclusion, whether looking backward or forward looking." *Barfknecht*, 378 B.R. at 162.

    C.    Does the Exclusion of Social Security Benefits, In Whole or In Part, from Plan Payments Constitute Bad Faith?

Having concluded that Debtors' plan is in technical compliance with Section 1325 and that the social security benefits are not included in the PDI calculation, this Court must now decide if the "plan was proposed in good faith and not by any means prohibited by law."

Debtors urge that they are in good faith because they have met the requirements of 11 U.S.C. §§ 1325(b) and 707(b)(2) and have proposed a plan which commits all disposable income for a term of sixty (60) months.  The Court disagrees with Debtors' assertion that strict, technical compliance with the means test necessarily satisfies a debtor's burden of good faith. *Stitt*, 403 B.R. 694, 702, 703 (Bankr. D. Idaho, 2008); *In re Westing*, Case No. 2010 WL 2774829 (Bankr. D. Idaho, 2010).  Determining whether a plan is proposed in good faith is a separate undertaking requiring an analysis of the totality of the circumstances.  *Deans v. O'Donnell*, 692 F.2d 968 (4th Cir. 1982) and *In re McLaughlin*, 217 B.R. 772 (Bankr. N.D. Tex. 1998).  Nevertheless, the Court acknowledges that it should be a rare case that finds a debtor in technical compliance with the terms of the Bankruptcy Code and yet in bad faith.  *Devilliers*, 358 B.R. at 863.

Trustee views Debtors' decision to exclude all but a portion of their social security

10

benefits as evidence of a lack of good faith. Trustee argues that Debtors' decision to include only $200.00 of their $1,854.00 per month in social security benefits is an *indicia* of bad faith under Section 1325(a)(3). *In re Allawas*, 2008 WL 6069662, 5-6 (Bankr. D.S.C. 2008); *In re Upton*, 363 B.R. 528, 536 (Bankr. S.D. Ohio, 2007). Trustee argues that Debtors' social security benefits render them capable of making higher payments to unsecured creditors.

Debtors have committed $34,510.00 in social security benefits to the plan.[6] Trustee asserts that the $1,854.00 per month available to Debtors from their social security benefits will entitle Debtors, over the life of the plan, to accumulate a surplus of $76,680.00 over and above payments they have committed. Although it appears Debtors' plan will now pay a sizeable dividend, Debtors arguably are capable of satisfying claimants in full.

Trustee argues that "the insufficiency of assets devoted to a plan may be a basis for a finding of lack of good faith under Section 1325(a)(3) should this court find that debtors were attempting to manipulate the statutory scheme for their own benefit at the expense of creditors." Memorandum in Support of Trustee's Objection to Confirmation at page 3 (P-43).

Trustee obviously believes that Debtors are manipulating the Bankruptcy Code. It vexes him that Debtors' plan provides less than full payment to unsecured creditors while permitting Debtors to retain the majority of their social security benefits. Trustee argues that Debtors have failed to demonstrate how excluding 90% of their social security benefits, enabling the accumulation of a $76,680.00 surplus over the life of the plan, while committing a negligible percentage of benefits to monthly living expenses demonstrates good faith.

At the outset it must be conceded that the exclusion of social security benefits from funds

---

[6] Based on the claims on file, estimated distribution to unsecured claimants will be $9,002.38 or roughly 38%.

available to pay creditors cannot constitute bad faith *per se* . As previously explained, Congress provided for this result in explicit and unequivocal language involving the calculation of CMI and DI.

Trustee has conceded that Debtors' expenses are reasonable and necessary to their support and maintenance. Thus, the only question that remains is whether Debtors' refusal to commit a greater share of exempt income to their proposed plan is evidence of bad faith.

Prior to 2005, some courts found that the act of not contributing the entirety of one's social security benefits to repay one's debts through a Chapter 13 plan necessarily branded the plan as not being filed in good faith. See, *Hagel v. Drummond*, *supra*.

The provisions of BAPCPA altered this analysis by including specific language excluding social security benefits from DI. Several courts have held that when the Bankruptcy Code specifically addresses a particular issue, the good faith standard should not be expanded to alter the statutory treatment of that issue. *See Matter of Smith*, 848 F.2d 813, 820-21 (7th Cir. 1988) ('Since Congress has now dealt with the issue quite specifically in the ability-to-pay provisions there is no longer any reason for the amount of a debtor's payments to be considered as even part of the good faith standard."); *In re Alexander*, 344 B.R. 742, 752 (Bankr., E.D. N.C. 2006) ("[T]he debtor's disposable income must be determined under Sect. 1325(b) and not as an element of good faith under Sect. 1325(a)(3)").

A similar result was reached in *Barfknecht*, 378 B.R. at 164  The Court found that:

> Social Security benefits are excluded as income of the debtor for purposes of satisfying the debtor's ability to pay test. The good faith test in section 1325(a)(3) serves as salutary purpose to be sure – cutting off abuse. But it strikes this court at least as an odd reading of the Code indeed to conclude that a debtor's *following* the Code, without more, could constitute abuse of the bankruptcy process. That sort of over-reading of the good faith standard would allow a court,

in the name of good faith, to ignore or overrule whole sections of the Code, an irresponsible approach to statutory constructions if ever there was one. See *Nat'l Labor Relations Bd.*, 511 U.S. 420, 456 (1999)... Needless to say, the court declines the trustee's invitation to do so in this case. As there is no other evidence indicating that the Debtor's plans have *not* been proposed in good faith, and the Debtors otherwise have been honest and forthcoming with the court, this court concludes that the plans have been proposed in good faith."

The *Barfknecht* Court also noted that:

We return then to the 'totality of the circumstances' as traditionally applied in this circuit. *In re Chaffin II*, 836 F.2d at 216 (reversing the bankruptcy court's denial of confirmation and the district court's affirmation '[b]ecause the bankruptcy court in effect found that [a few] factors per se constituted bad faith"). The trustee here has not directed the court to any peculiar circumstances in either of these cases demonstrating a lack of good faith. The trustee points only to the issue of the Debtors' retention of some or all of their Social security benefits. Even before BAPCPA, such an argument would have failed in the Fifth Circuit. See *id*. The trustee has not demonstrated – or even argued – that the Debtors do not propose these plans with an intent not to effectuate them. Nor has the Trustee demonstrated or argued that the Debtors have proposed this plan for any purpose not permitted by the Bankruptcy Code. After considering the totality of the circumstances with respect to the Debtors there is no basis for concluding that either of these plans were not proposed in good faith. According the trustee's reading of good faith in these two matters would amount to adopting a per se rule. This is not permitted in this circuit. See *In re Chaffin II*, 836 F.2d at 216. *Id.* at 164.

In this case, Trustee urges the Court to temper Congress' explicit prohibition against including social security benefits in the calculation of CMI and DI by arguing a lack of good faith when the proposed Chapter 13 plan pays less than 100% to unsecured creditors. The Court finds Trustee's arguments regarding Debtors' lack of good faith unpersuasive. Congress specifically mandated the exclusion of social security benefits from the calculation of CMI. Unlike expenses, which must be reasonable and necessary to the support and maintenance of Debtors and their dependants, there is no ultimate modifier on this exclusion. Any holding that alters that scheme would place it in direct contravention with the statutory language.

Like the court in *Barfknecht*, this Court finds that retaining all or part of these benefits while paying less than 100% of general unsecured creditors' claims does not constitute bad faith in proposing the plan *per se*. Instead, Debtors' good faith must be examined under a totality of the circumstances analysis.

Trustee has not met his burden of proof under a totality of circumstances test. Trustee's only factor in support of his conclusion is a logical consequence of excluding social security benefits from the CMI and DI calculations. Basic mathematics result in a smaller distribution to unsecured creditors if Debtors fail to contribute their entire social security benefit to the plan. That outcome, however, is based solely on the law of logical consequences, not bad faith intent.

The logical consequence of Congress' decision to exclude social security benefits from the amount Debtors must contribute to a Chapter 13 plan, is that a lesser amount will be available to pay unsecured creditors. Conversely, if Congress had included social security benefits in the calculation of income, the logical consequence would be increased payments to unsecured creditors. Logical consequences cannot be an *indicia* of bad faith, they are simply a by-product of Congress' express statute.

The natural consequence of Congress' specific exclusion of social security benefits cannot be seen as lack of good faith by Debtors. Debtors have taken no deductions for medical expenses or taxes incurred because of social security benefits. Nor is this the rare debtor whose proposed plan is technically in compliance with Section 1325(b), but proposed in bad faith. Instead, this is a relatively typical fact pattern which follows the natural consequences of Congressional intent.

This Court understands the emotional tug that can lead to a finding that social security

benefits must be included in PDI or that to exclude them is an act of bad faith. It also struggles with a holding that allows debtors to keep substantial social security benefits when creditors could be paid in full from those benefits. But Congress has spoken.

The Court declines to find that, standing alone, Debtors' exclusion of the majority of their social security benefits from the proposed plan is an *indicia* of lack of good faith. There is no suggestion that the plan was proposed without an intent to effectuate, or that the plan was proposed for any purpose not permitted by the Bankruptcy Code.

## IV. RULING

Through the passage of BAPCPA, Congress attempted to balance the competing interests of a fresh start while curtailing the perceived abuses of Chapter 7. By requiring certain debtors to participate in Chapter 13, Congress decided to exclude social security benefits from the amounts Debtors were required to commit to Chapter 13 plans. As such, it will not force Debtors to include their social security benefits in PDI for purposes of 11 U.S.C. § 1325(b).

This Court also finds that the exclusion of social security benefits from Schedule I and the proposed plan payments does not constitute a *per se* finding of lack of good faith, without more. Doing so would eviscerate Congress's statutory scheme.

The Court finds that Debtors' plan has been proposed with an intent to effectuate and for purposes permitted by the Bankruptcy Code. There is no evidence of concealment of assets or prior bankruptcy cases. Furthermore, Debtors are current in their proposed plan payments and are paying unsecured creditors more than they would receive in a Chapter 7 liquidation and amounts greater than Debtors' disposable income as calculated on Form B22C. Therefore, this Court finds that the Chapter 13 plan has been proposed in good faith. Trustee's Objection to

Confirmation is overruled, and the Debtors' plan is CONFIRMED.

New Orleans, La., July 21, 2011.